## WILLIAM E. RAYMOND, TRUSTEE, *vs.* GEORGE H. CLARK AND ANOTHER.

A railroad company, empowered by its charter to issue bonds and secure them by a mortgage of its property to the treasurer of the state in trust for the bondholders, with power on the part of the trustee to take possession of and operate the road in default of payment, made such a mortgage, describing the property mortgaged as follows:—"All and singular the railways, rails, bridges, station houses, depots, shops, buildings, tools, cars, engines, equipments, machinery, fuel, materials, privileges, and property real or personal belonging or which may hereafter belong to the grantors and be used as a part of said

railroad or be appurtenant thereto or necessary for the construction, operation or security thereof; and also all the rights and franchises of said company, with the tolls, income, issues and profits thereof." Held that a quantity of office furniture used in one of the offices of the company was covered by the mortgage.

The rule with regard to the effect of general words following the specification of particular articles in a conveyance, is, that if the object was to convey a limited interest the general words do not enlarge that interest, but if a general interest then they operate to include every thing that falls within the general words used. It is simply applying the general rule that an instrument shall be construed according to the intention of the parties as gathered from it.

The defendants, with knowledge of the mortgage and of the fact that the railroad company had made default of payment of interest on its bonds, attached the office furniture, removed it, and afterwards sold it on execution. The trustee, on the property being taken, made demand for it upon the officer, and afterwards brought an action of trover for it. The defendants denied the right of the trustee to the property and the case was tried on its merits, and reserved on a finding of the facts for the advice of this court. Held that the court would not entertain the objection that the demand for the property should have been made on the defendants themselves and not on the officer.

TRESPASS for the taking of personal property, with a count in trover; brought to the Superior Court in Hartford County. General issue, with notice, facts found, and case reserved for advice. The case is fully stated in the opinion.

*A. P. Hyde*, for the plaintiff.

*G. G. Sill*, for the defendants.

PARDEE, J.   This is an action to recover the value of certain articles of personal property. The declaration contains two counts, one in trespass, the other in trover. The case is reserved for the advice of this court as to what judgment shall be rendered.

The Connecticut Valley Railroad Company was incorporated in 1868, with power to construct a railroad from Saybrook to Hartford, and to issue bonds and mortgage its property to secure them. On December 31st, 1870, the company, for the purpose of securing an issue of its bonds to the amount of $1,000,000, executed a first mortgage of its railroad and property to the treasurer of the state and his successors in office in trust for the holders of the first issue of bonds; and on October 1st, 1872, for the purpose of securing a further

issue of bonds to the amount of $1,250,000, executed a second mortgage upon the same property to the treasurer of the state and his successors in office in trust for the holders of the second issue of bonds; which two mortgages were duly recorded. In each case the language of the grant was as follows: "All and singular the railways, rails, bridges, fences, station houses, depots, shops, buildings, structures, tools, cars, engines, equipments, machinery, fuel, materials, privileges, appendages, appurtenances, and property real or personal, which now belong or may at any time hereafter belong to said company, and be used as a part of said railroad, or be appurtenant thereto, or necessary for the construction, operation or security thereof; and also all the rights and franchises of said company, together with the tolls, income, issues and profits thereof, and every thing necessary for the completion and operation of said road."

On May 20th, 1876, the company was in the possession and use in its office in Hartford of one cylinder desk, one cylinder side-desk, one high desk, one chest desk, one table desk, one five-foot table, two four-foot tables, one umbrella stand, one letter-press stand and drawers, one wardrobe, one letter-press and stand, seven wooden arm chairs, six cane-seat chairs, and one swivel chair; some of which articles were purchased by the company before, and some of them after the issue of the first mortgage bonds; and it is found by the court that all of them were necessary to the proper prosecution of the business of the company. On the day last mentioned the defendants attached them, and subsequently sold them upon an execution in their favor against the company; and on that day all bonds of both issues were outstanding.

Some of the questions argued in this case have been determined in the case of *Buck, Trustee,* v. *Seymour,* heard at the same term, and are not herein further noticed.

The defendants insist that the furniture in the office of the company is to be excluded from the operation of the grant, for the reason that where particular things are named, general words following cannot include anything not named, or *ejusdem generis,* citing *Hare* v. *Horton,* 5 Barn. & Adol., 715,

*Hudson* v. *Whiting*, 17 Conn., 487, *Doe* v. *Myrick*, 2 Cromp. & Jervis, 223, and *Jackson* v. *Stevens*, 16 Johnson, 180.

In *Hare* v. *Horton* the language of the mortgage was, "iron foundry, two dwelling-houses and appurtenances, together with all grates, boilers, bells and other fixtures in and about the said two dwelling-houses, cranes, presses, and other fixtures in foundry, worth £600;" and it was held that the specification of grates and other fixtures in and about the dwelling-houses showed that those in the foundry were not intended to pass. Taunton, J., said: "Why, it may be asked, were these particular ones mentioned, if the whole were intended to pass? Besides, the mention of bells and other fixtures of an inferior kind, shows that fixtures of greater value and on a larger scale were not contemplated. And, in the recital of the plaintiff's agreement to lend money, it does not appear that any security was proposed beyond that of real property." In *Ringer* v. *Cann et al.*, 3 Mees. & Wels., 343, Lord Abinger, C. B., said:—"I think the distinction in all these cases is, whether the object of the parties was to pass a limited interest or not; if it was, then the rule is, we are not to construe general words so as to enlarge that limited interest. I believe that in every case that has been mentioned the object was to pass a particular estate; but such is not the object here; the object of the conveying party here was to make a general assignment of his property over to trustees to pay his creditors." In the same case Parke, B., said:—"Now let us look to the object of the parties. In *Doe* v. *Myrick* the object of the parties was to pass only a particular estate, and the general words were restricted to meet the obvious intention of the parties. In that case the estate consisted of thirteen acres, where eight acres only by name were specifically granted, and the general words were held not to convey the other five. There the intention of the parties was, as my Lord Chief Baron has observed, to convey a particular thing only. But that is not the case here. Here the object of the parties is to convey every thing valuable and capable of being turned into cash; that appears from the recitals of the deed itself, which we must take into our consideration in order to

construe the operative words of the clause. The insolvent agrees to transfer to trustees all his debts, personal estate and effects of every description, upon trust for the benefit of his creditors; and the assignment then goes on to enumerate the personal estate, which is the property to the trustees the most valuable; then follow the general words, which cannot be restricted, the object of the parties being to pass all property that might be beneficial to creditors." In *Jackson* v. *Stevens*, 16 Johnson, 110, a person seized of three undivided fourth parts of a farm conveyed one equal moiety of the farm, describing it by metes and bounds, " together with all the estate, right, title, &c., I, the grantor, have to the above described premises." It was held that the general words were not to be construed as extending the grant beyond the one moiety of the premises. The court said:—" It would be doing violence to the deed and to the intention of the parties to say that it was meant to convey the whole farm." In *Hudson* v. *Whiting*, 17 Conn., 487, *A* had given to *B* a power of attorney to collect and settle all claims in favor of *A*, and give discharges; to execute all such bonds and deeds as *B* should judge expedient; to sell and convey all the property of *A;* and to transact any and all other business matters and things which *A* could lawfully do, if he were personally present. Under this power *B* executed a bond to *C* for a debt justly due to him from *A;* held that *B* had authority to execute it. The court said:—" We think the instrument is entitled to a reasonable and just construction. The design was to enable the attorney to settle the copartnership business of the firm; to adjust the debts due from the company, as well as those in their favor. Where a balance was ascertained to be due from the company to a creditor, it was not the duty of the attorney to say to the creditor, I have nothing to do with this claim; the settlement is not within the scope of my authority. He might deem it expedient to secure its payment, as adjusted, by giving a bond for the debt, until funds could be realized for its payment. The clause already cited we think authorizes it."

We have quoted the reasons given for these decisions for

---

Raymond *v.* Clark.

---

the purpose of showing that the intention of mortgagor and mortgagee controlled the result in each case. And, speaking of general rules of construction applicable to every deed, Mr. Cruise says (Dig., tit. 32, chap. 23, sec. 2): "It is a maxim of the highest antiquity in the law that all deeds should be construed favorably and as near the apparent intention of the parties as possible, consistent with the rules of law." In the case of railroad mortgages the statute provides that upon default of payment of interest the trustee for the bondholders shall have possession of and operate the railroad in their behalf; the mortgage before us was made and received by the respective parties in view of this provision of the law. After naming the more important and valuable items of property it is made to include all "property real and personal which may at any time hereafter belong to said company, and be used as a part of said railroad, or be appurtenant thereto, or necessary for the construction, operation or security thereof." From this language, interpreted in the light of the statute, the inference is irresistible that it was the intention of the company to pledge, and upon failure to pay, to surrender, all property which it had found it necessary to procure and use for the transaction of its business. It is not to be presumed that it intended to surrender all rights and franchises under the charter, including the right to earn and receive tolls and profits, its railway and most valuable property, and yet reserve to itself the furniture in its office.

The railroad company retaining possession, and making use of the mortgaged furniture in the prosecution of its business, the defendants, with knowledge of the mortgage, attached and removed it from the possession of the company, and sold it upon execution, and applied the proceeds in part satisfaction of a judgment in their favor. The company had made default of payment of interest upon its bonds; it neither made any objection to or effort to prevent this appropriation by unsecured creditors of the mortgaged property. Inasmuch as the defendants have failed to show that the property taken by them was not necessary to the security of the bondholders, it is to be presumed that they knowingly

took that to which the bondholders had a prior and better title, and the acquiescence of the company in their action was a breach of the condition upon which it held and used the furniture. Under these circumstances it was both the right and duty of the trustee to regain possession of the property thus taken; this right and duty existing and to be exercised whenever occasion required, independently of the special provision for taking from the corporation its franchise and all other property upon default of payment.

Prior to the institution of this suit the plaintiff, through an agent, demanded the return of the property from the officer who had taken and then held it in behalf of the defendants. They now urge that the plaintiff is not entitled to a judgment for the reason that the demand was not made upon themselves. The sole office of the demand is to notify them that the plaintiff has the superior right to the possession of the property, and thus give opportunity for a surrender of it without costs. But they took it with knowledge of the mortgage and of the rights of the trustee under it; took it because they believed and intended to maintain that their lien took precedence of his. After the service of process upon them in this action they persisted in this claim, sold the property, and applied the proceeds upon their execution against the Valley Railroad Company; and, under the notice accompanying their plea, they have defended their right to do this to this present. There has been, therefore, a trial of the case upon the merits; the facts are brought to our knowledge by the record, and upon these the judgment must ultimately be for the plaintiff. If, upon the technical point that the demand was upon the officer and not upon the defendants in person we advise a judgment for them, saying that upon the facts the judgment must ultimately be against them, we practically order another trial for the sole purpose of allowing them to recover a bill of costs in this action, and subject them to costs, with additional expense, in another suit. This court has repeatedly declined to present the barren gift of a bill of costs to litigants under such circumstances. In *Gold* v. *Ives*, 29 Conn., 123, the court said as follows:—"So also, as a general rule, a new

trial ought not to be granted merely to enable a party to recover nominal damages. * * · Motions for new trials are addressed to the sound judicial discretion of the court, and ought never to be granted except to subserve the purpose of substantial justice between the parties. And besides, the controversy between these parties in the court below related not to nominal, but substantial damages."

We have therefore determined to advise the Superior Court to render judgment for the plaintiff in this action.

In this opinion the other judges concurred.